ELLIS, Judge.
Defendant Lea was the owner of an improved lot in Jackson, Louisiana. Plaintiff was desirous of leasing this property. It was orally agreed with plaintiff and defendant, in May, 1950, that the lot and house was leased to the plaintiff at the monthly rental of $65 per month, for a term of five years. However, certain repairs and alterations were necessary before delivery of the premises to plaintiff; these repairs and alterations consisted in transforming the house standing on the lot into four apartments, three downstairs and one upstairs. As to the payment for these repairs, there is a difference between the parties as to whom was to pay for the repairs. It is the *2 contention of the plaintiff that the repairs were not to exceed the sum of $1800 and that since the defendant did not have the necessary funds to defray the costs of materials and labor as the work progressed he was to advance the money to cover such materials and labor and after completion of the repairs and alterations, the defendant was to repay him from a loan on the property at the local bank. It is the contention of the defendant that it was plaintiff who desired the repairs and alterations to the house; that he leased the property to the plaintiff as is, at the monthly rental of $65 per month for a term of five years; that plaintiff was to bear the costs of the repairs and alterations, vigorously denying that he agreed to repay the plaintiff the money expended for the repairs and alterations, contending that plaintiff was to be repaid by subleasing the apartments, that is, plaintiff was to receive all rents over the $65 monthly rental.
Be that as it may, shortly after the oral agreement of lease of the premises, construction of the necessary repairs and alterations were undertaken. The plaintiff paid the monthly payrolls of May, June and July, 1950, and paid for certain materials going in the construction of the repairs and alterations from May 25 to July 7, 1950, inclusive, making a total expenditure of $1427.28. (These expenditures appear to have been paid by Jackson Motor Company for the use and benefit of plaintiff.) However, while the work was in progress and practically completed, the building was totally destroyed by fire. The building had been insured for $3000, with a loss payable clause to the Jackson Bank, to secure it on a mortgage previously given by defendant to the bank; the insurance company paid the bank its claim and paid the residue to defendant.
After a refusal of defendant to pay for the repairs and alterations or give a note therefor, plaintiff filed this suit. From a judgment dismissing his suit, he has appealed. '
Since there were no witnesses to the verbal agreement between the plaintiff and defendant and the amount claimed by the plaintiff exceeds the sum of $500, the rule of law governing such cases is set forth in Civil Code, Article 2277, viz.: “All agreements relative to movable property, and all contracts for the payment of money, where the value does not exceed five hundred dollars which are not reduced to writing, may be proved by any other other competent evidence; such contracts or agreements, above five hundred dollars in value, must be proved at least by one credible witness, and other corroborative circumstances.” (Emphasis added.)
The plaintiff testified in accordance with his contention as above stated. He called Mr. C. E. Gillum, President of the Bank of Jackson. Mr. Gillum testified that before leasing the property, plaintiff called on him to ascertain if defendant could borrow money on the property after the completion of the repairs and alterations; that he informed plaintiff that he, Gillum, would do so to the extent of approximately $1500; that plaintiff was to inform defendant of that fact; thereafter defendant’s wife came to see him about the loan to take care of the repairs; that they, Mrs. Lea and witness, discussed the loan, and he agreed to make the loan; that defendant’s wife had been in to see him about any previous loans which had been made to' defendant. However, there is no direct evidence that the defendant ever discussed the loan with Mr. Gillum nor did the bank ever make the intended loan to defendant.
It may be proper at this time to mention that defendant objected to the testimony of Gillum with reference to what transpired, said or done between witness and defendant’s wife on the ground that it was “hearsay”, without the presence of defendant. The evidence was admitted subject to the objection. Thereafter, Mrs. Lea, defendant’s wife, was offered as a witness 'for defendant, without qualification. Without in any way reserving his rights under his previous objection to the testimony of Gillum, defendant’s counsel proceeded to question Mrs. Lea, defendant’s wife, about the conversation had between Mr. Gillum and 'herself. In that testimony, she vigorously denied that she had discussed a loan with Mr. Gillum for the purpose of paying for the repairs and altera *3 tions to the house in question. Whether or not the objection to the testimony of Gil-lum was well taken, the defendant, by his action in offering his wife as a witness, without qualification and in proceeding to examine her on the subject matter testified to by Mr. Gillum without reservation of his previous objection, waived and abandoned his objection to the testimony of Mr. Gillum and his testimony has to be given such weight and effect as it may deserve. It is to be noted that Gillum had no interest in the controversy between the parties litigant while defendant and his wife are interested in warding off the payment for the repairs. It is our conclusion therefore that the testimony of Gillum is a strong corroborating circumstance that these repairs were finally to be paid by defendant from a loan from the bank. The lower court erred in not so considering it as such.
The lower court, in his reasons for judgment, states:
“It seems improbable that Mr. Acosta, (the plaintiff), as a business man, would have made such an agreement as Mr. Lea contends that he did make.”
With that statement, we are in full accord in that the property or house belonged to defendant; the repairs and construction were of permanent nature and were to remain as part of the house; they enhanced the value of the house and were an investment insuring to the benefit of the defendant rather than to the plaintiff.
We are not impressed with the testimony of the defendant and/or his wife. They visited the house during the progress of the work practically daily. They admit that they did not have the ready cash to defray the costs of materials and labor as the work progressed. Accordingly to Mr. Gillum* the bank was to loan to the defendant the amount of money to cover the improvement only after its completion and secured by an additional mortgage on the premises. We, like the trial judge, are of the opinion that “it is entirely possible, although improbable, that the transaction was as Mr. Lea said it was.” (Emphasis ours.) The district judge, it thus appears, considered the contention of defendant as being only possible, yet improbable, thus attaching little weight and effect, if any, to it. Another fact to be considered is that the house was not to be possessed or delivered to plaintiff until the repairs and construction were completed.
In final conclusion, we are of the opinion that there are sufficient corroborating circumstances in this case to warrant a reversal of the judgment appealed from and granting a judgment in plaintiff’s favor.
As to the exception of no right or cause of action, it is based on the fact that defendant received two statements of the amount expended and the itemized statement annexed to the petition on the bill head of the Jackson Motor Company. The testimony of plaintiff is to the effect that he is the co-owner of the Jackson Motor Company, and that he used that company and its bill-head for his own convenience. This evidence is not contradicted. Furthermore, defendant does not contend that he had any contractual relations with the Jackson Motor Company or owe them anything. If he is' decreed to owe plaintiff anything, he will not have to pay the amount twice. In other words, the judgment rendered in this case will be res-adjudicata as to his liability in the repairs and alterations of his house. We see no merits in the exception and it was correctly overruled by the district court.
It is, therefore, ordered that the judgment of the district court be reversed and that there be judgment in favor of plaintiff and against defendant in the sum of $1,538.-28 together with legal interest from judicial demand until paid and all costs.